IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KEVIN RODGERS,

    Plaintiff,                No. CIV S-07-2269 WBS DAD P

    vs.

JAMES TILTON, et al.,

    Defendants.         FINDINGS AND RECOMMENDATIONS

_____/

        Plaintiff is a state prisoner proceeding pro se and in forma pauperis with an action filed pursuant to 42 U.S.C. § 1983. On March 10, 2009, defendants moved to dismiss this action, arguing that plaintiff has failed to exhaust available administrative remedies prior to bringing suit and that plaintiff's complaint fails to state a cognizable claim for relief. Plaintiff has filed an opposition, and defendants have filed a reply.

**BACKGROUND**

        Plaintiff is proceeding on his original complaint against defendants Athanassious, Moreno, Pettigrew, Whitten, and Wyant. Therein, he alleges as follows. On August 18, 2006, defendant Pettigrew opened the door to Dorm 3 and asked plaintiff if he needed medication either because he had been dropped on his head or had been on some kind of drugs prior to being incarcerated. Plaintiff approached the door and placed his hand on the door frame. Defendant

Pettigrew slammed the door shut, pinning plaintiff's finger between the metal door and the door frame. Plaintiff screamed in pain and told defendant Pettigrew that his finger was cut off and bleeding. Defendant Pettigrew laughed until he saw plaintiff's blood pooled on the floor. Defendant Pettigrew then yelled "man down" and asked another inmate to retrieve a towel. (Compl. at 11.)

Plaintiff was taken to the B-1 Clinic where defendant Athanassious attempted to re-attach his crushed and severed digit. Defendant Athanassious stitched and dressed plaintiff's finger and provided him with pain medication. On August 31, 2006, plaintiff had an appointment with defendant Athanassious to have the stitches removed and to treat his pain and possible infection. However, defendant Athanassious was not there, so Nurse Rubio removed plaintiff's stitches. Nurse Rubio informed plaintiff that his finger looked bad because it was swollen and pus was coming from the wound. Plaintiff's finger also smelled bad, and there was dead tissue surrounding exposed bone. Nurse Rubio asked the physician on duty to look at plaintiff's finger. The physician determined that plaintiff needed to go to an outside hospital to have a specialist examine him. Shortly thereafter, defendant Athanassious came in and looked at plaintiff's finger. He said that plaintiff should continue to change the dressing on his finger, use benedyne soaks and prescribed a stronger antibiotic for plaintiff. (Compl. at 20-21.)

On September 7, 2006, plaintiff went back to the B-1 Clinic because he was in unbearable pain and believed that his infection was getting worse. He saw Dr. Long who asked him why he was soaking his finger in benedyne. Plaintiff told him that defendant Athanassious recommended the treatment. Dr. Long told the nurse on duty to soak plaintiff's finger in peroxide. He also had plaintiff admitted to the G-1 Hospital. (Compl. at 21.)

On September 8, 2006, plaintiff was unable to urinate, so Dr. Calvo ordered a catheter for him. He sent plaintiff to B-2 Surgery where defendant Athanassious was ready to perform the procedure. According to plaintiff, defendant Athanassious grabbed his penis and started to push the catheter in, but at some point he met resistance because it would not go in any

further. Defendant Athanassious attempted to force the catheter in as plaintiff screamed in pain, asking for him to stop because he was hurting plaintiff. The medical technical assistant had to hold plaintiff down during this incident. Plaintiff repeatedly asked defendant Athanassious to stop, but he kept shoving the catheter further and told plaintiff to keep his mouth shut and that he was being a baby. After fifteen to twenty minutes the catheter was in, but plaintiff could barely move or stand. When plaintiff returned to his room, he could not sit or lay down and moving was painful. Plaintiff could only stand in his room in one place for nearly an hour until Dr. Calvo told a nurse to remove his catheter. Once the catheter was out, plaintiff began to bleed and bled for three days thereafter. (Compl. at 23-24.)

Plaintiff was rushed to Doctor's Hospital to see a specialist with regards to his finger. While at the hospital, medical personnel were unable to bring his infection under control and informed plaintiff that they would need to amputate half of his finger. According to plaintiff's specialist, the bone in plaintiff's finger could not be salvaged and should have been amputated at the time of his injury. Plaintiff stayed at Doctor's Hospital receiving treatment until September 13, 2006. (Compl. at 22.)

After plaintiff returned to California Medical Facility ("CMF"), Sergeant Brida called defendant Wyant to inquire about bed space availability for plaintiff. Defendant Wyant confirmed that there was an opening on J-Wing, the same unit in which defendant Pettigrew worked. Defendant Wyant informed Sergeant Brida that plaintiff had a staff complaint pending against defendant Pettigrew and that if plaintiff dropped the complaint he would be able to move to J-Wing. Sergeant Brida told defendant Wyant that plaintiff would drop the staff complaint but then told plaintiff not to mention to defendant Wyant that he had no actual intention of dropping the complaint. (Compl. at 12-13.)

Plaintiff alleges that, on September 20, 2006, defendant Wyant called plaintiff to the staff break room. Plaintiff believed that defendant Wyant was going to interview him about his staff complaint. Instead, defendant Wyant accused plaintiff of not typing his complaint and

3

insisted that plaintiff drop the complaint and pursue a claim against the CMF maintenance department instead because the doors, including the one which injured plaintiff, were in poor condition. Plaintiff told defendant Wyant that he would not drop his complaint but that he would think about their discussion. Plaintiff then asked defendant Wyant if he could move to Dorm 5, and Wyatt said "yes." (Compl. at 13.)

        Defendant Wyant later spoke with defendant Pettigrew who approached plaintiff and asked about his intent to move to Dorm 5. Pettigrew told plaintiff that the inmates in Dorm 5 did not want plaintiff there because he was too hyper and that. Defendant Pettigrew then told the inmates in Dorm 5 to vote to exclude plaintiff, which they did. Defendant Pettigrew told plaintiff that he was instead being moved to an upper bunk in Unit 3. Plaintiff told Pettigrew that he had a medical chrono for housing in a lower tier and lower bunk for medical reasons. Defendant Pettigrew said he did not care and asked plaintiff if he would like to get "cuffed up." Plaintiff responded "no" and began packing his things. Officer Tis took plaintiff upstairs where plaintiff showed Sergeant Thomas his medical chrono. Sergeant Thomas asked plaintiff if defendant Pettigrew was aware of his chrono, and plaintiff responded "yes." Sergeant Thomas then told defendant Pettigrew and plaintiff that plaintiff's move was cancelled. Defendant Pettigrew ordered plaintiff to return to his cell but not to unpack because he would not still be there the following day. (Compl. at 14-15.)

        On the same night, plaintiff went to see Lieutenant Norris and told him that he merely wanted defendant Pettigrew to leave him alone. Lieutenant Norris assured him that defendant Pettigrew would leave him alone in the future. (Compl. at 15.)

        On or about September 1, 2006,[1] an unknown officer awoke plaintiff from his sleep and placed him in handcuffs. He informed plaintiff that defendant Moreno wanted to see

---

[1] Plaintiff has listed September 1, 2006, as the date the described events took place. However, in light of the chronology of events set forth in the rest of plaintiff's complaint, he presumably meant to allege October 1, 2006, as the date these events took place.

4

him and escorted him to his office.  Plaintiff asked defendant Moreno to loosen or remove the handcuffs because they were too tight and causing him severe pain.  Defendant Moreno said "first, we have something to talk about before the cuffs come off."  An unknown officer then told defendant Moreno about plaintiff's recent surgery, and defendant Moreno told the escorting officer to remove the cuffs.  Defendant Moreno then gave plaintiff a worker's compensation form and told him to sign it.  Plaintiff explained that he had previously refused to sign the form when Lieutenant Norris gave it to him because his injury did not occur at work, and he would be committing fraud if he signed a worker's compensation form.  Defendant Moreno then told plaintiff to sign the document or face lock-up.  He also summoned plaintiff's psychologist to convince him to sign the form.  Lieutenant Norris then came in and took plaintiff out of the office.  (Compl. at 15-17.)

Not long thereafter, plaintiff encountered defendant Moreno while sweeping a hallway.  Evidently, defendant Moreno heard plaintiff talking to himself and said "I knew I should have put your J-Cat ass in the E.O.P. when I had the chance."  (Compl. at 17-18.)

On October 11, 2006, plaintiff was walking back to his cell from breakfast.  He noticed defendants Pettigrew and Whitten looking through the crowd of inmates returning from the chow hall.  They approached plaintiff, and defendant Whitten grabbed a shake out of plaintiff's hand.  He threw it and the rest of plaintiff's lunch on the floor and ordered him to put his hands on the wall.  Whitten began to conduct a clothed search of plaintiff and man-handled nearly every part of plaintiff's body.  Plaintiff informed Whitten that he was hurting him, but defendant Whitten continued his abusive search.  Defendant Whitten grabbed plaintiff's buttocks and squeezed exceptionally hard, causing plaintiff excruciating pain because he had a staph infection and abscesses in the area.  Plaintiff moved his right hand down to his buttocks, and defendant Whitten then placed plaintiff in handcuffs, causing him pain in his fingers and hands.  Plaintiff tried to tell defendant Whitten that he did not intend to remove his hand from the wall,

/////

but defendant Whitten said he did not care about plaintiff's abscesses and dragged him down the hallway. Meanwhile, defendant Pettigrew stood by smiling. (Compl. at 18-19.)

Defendant Whitten placed plaintiff in a room and ordered him to pull his pants down to his ankles and bend over so that he could see plaintiff's abscesses and then place him in a cage. At that point, defendant Wyant appeared, and plaintiff informed him of defendant Whitten's conduct. Defendant Wyant said that plaintiff was lucky because defendant Whitten was worse years ago. (Compl. at 19.)

**PLAINTIFF'S CLAIMS**

On October 8, 2008, the court found that plaintiff's complaint appeared to state cognizable claims for relief under 42 U.S.C. § 1983 against defendants Athanassious, Moreno, Pettigrew, Whitten, and Wyant. Specifically, the court concluded that, liberally construed, plaintiff's complaint appeared to state the following claims: (1) defendant Pettigrew used excessive force when he slammed plaintiff's finger in the door in violation of the Eighth Amendment; (2) defendant Athanassious provided plaintiff with inadequate medical care for plaintiff's finger injury and in connection with the insertion of his catheter in violation of the Eighth Amendment; (3) defendants Moreno, Pettigrew, Whitten, and Wyant conspired to retaliate against plaintiff for filing a staff complaint against defendant Pettigrew; and (4) defendants Moreno, Pettigrew, Whitten, and Wyant retaliated against plaintiff in violation of the First Amendment. (Compl. at 27-31.)

**DEFENDANTS' MOTION TO DISMISS**

I. Defendants' Motion

Counsel for defendants argues that the court should dismiss this action against defendants Moreno, Pettigrew, Whitten, and Wyant because plaintiff failed to exhaust administrative remedies prior to filing this suit. Counsel acknowledges that plaintiff filed two inmate appeals regarding the circumstances surrounding this case. First, in administrative appeal Log No. 06-1759, dated August 23, 2006, plaintiff asked prison officials to discipline defendant

1  Pettigrew for his "unprofessional conduct and gross negligence" in making fun of plaintiff's
2  mental health and for shutting the door on his finger.  Plaintiff also asked for compensation for
3  his injury and that the maintenance department repair the doors to prevent other injuries.
4  According to defense counsel, plaintiff's administrative appeal Log No. 06-1759 makes no
5  mention of most of plaintiff's allegations regarding events that took place after defendant
6  Pettigrew shut the door on plaintiff's finger.  Moreover, defense counsel argues, plaintiff only
7  accuses defendant Pettigrew of negligence, which does not state an Eighth Amendment violation.
8  Accordingly, counsel concludes that administrative appeal Log No. 06-1759 does not serve to
9  meet the exhaustion requirement as to plaintiff's claims against defendants Moreno, Pettigrew,
10  Whitten, or Wyant.  (Defs.' Mot. to Dismiss at 8-9, Grannis Decl., Lewis Decl., Exs. 1-2.)

11  Similarly, counsel for defendants argues that, in administrative appeal Log No.
12  06-1947, dated September 18, 2006, plaintiff asked prison officials to severely reprimand
13  defendant Athanassious.  Plaintiff also asked for compensation for his injury caused by defendant
14  Athanassious' "negligence and malpractice."  According to defense counsel, administrative
15  appeal Log No. 06-1947 makes no mention defendants Pettigrew, Moreno, Wyant, or Whitten or
16  any of the allegations in plaintiff's complaint against them.  Nor does it mention defendant
17  Athanassious' attempt to insert a catheter into plaintiff's penis or the alleged injury it caused to
18  plaintiff's penis.  Accordingly, counsel concludes that administrative appeal Log No. 06-1947
19  also does not serve to satisfy the exhaustion requirement with respect to plaintiff's claims against
20  defendants Moreno, Pettigrew, Whitten, or Wyant.  (Defs.' Mot. to Dismiss at 9, Grannis Decl.,
21  Lewis Decl., Exs. 5-6.)

22  Counsel for defendants also argues that the court should dismiss this action
23  against defendant Athanassious because plaintiff's complaint fails to state a cognizable claim for
24  deliberate indifference against him.  Counsel acknowledges that plaintiff alleges in his complaint
25  that defendant Athanassious exercised deliberate indifference when he stitched and dressed
26  plaintiff's finger on August 18, 2006, and recommended that plaintiff continue to receive

7

dressing changes and benedyne soaks on August 31, 2006. Counsel also acknowledges that plaintiff alleges in his complaint that defendant Athanassious attempted to force a catheter into plaintiff's penis, causing plaintiff great pain and bleeding for several days. However, counsel argues that plaintiff's complaint contains no allegations of facts actually describing deliberate indifference on the part of defendant Athanassious. To the contrary, counsel argues that the allegations of the complaint demonstrate that defendant Athanassious treated plaintiff when he saw him with an injury. Defendant Athanassious did not deny, delay, or intentionally interfere with plaintiff's medical care. At most, plaintiff alleges that defendant Athanassious was negligent when he treated plaintiff's finger. Accordingly, counsel concludes that the complaint fails to state a cognizable claim for deliberate indifference against defendant Athanassious. (Defs.' Mot. to Dismiss at 12.)

Similarly, counsel for defendants argues that plaintiff's complaint fails to state a cognizable claim for deliberate indifference against defendant Pettigrew. Counsel acknowledges that plaintiff alleges in his complaint that defendant Pettigrew shut the door on plaintiff's finger and laughed when plaintiff screamed. However, counsel argues that plaintiff himself alleges that defendant Pettigrew then opened the door, yelled "man down," and asked another inmate to get a towel. In this regard, counsel contends that under plaintiff's own allegations, as soon as defendant Pettigrew realized that plaintiff faced a substantial risk of serious harm to his health he took reasonable steps to abate the risk. Accordingly, counsel concludes that the complaint fails to state a cognizable claim for deliberate indifference against defendant Pettigrew. (Defs.' Mot. to Dismiss at 14.)

II. Plaintiff's Opposition

In opposition to defendants' motion to dismiss, plaintiff argues that he has exhausted his claims because he pursued his administrative appeal Log No. 06-1759 and administrative appeal Log No. 06-1947 through the director's level of review. Plaintiff also appears to argue that the court should make an exception to the exhaustion requirement or

exercise leniency where, as here, the administrative adjudicative system does not function effectively and the plaintiff has already suffered irreparable injury and injustice.  (Pl.'s Opp'n to Defs.' Mot. to Dismiss at 1-2.)

Plaintiff also argues that he has stated a cognizable claim for relief against defendants Athanassious and Pettigrew.  Plaintiff contends that the court must construe his complaint liberally because he is proceeding pro se.  Plaintiff also appears to contend that he has stated the essential elements for a cognizable Eighth Amendment claim as well as a First Amendment retaliation claim.  (Pl.'s Opp'n to Defs.' Mot. to Dismiss at 2-6.)

III. <u>Defendants' Reply</u>

In reply, defense counsel reiterates the contention that plaintiff failed to exhaust administrative remedies as evidenced by the differences between the allegations in his inmate appeals and the allegations in his civil rights complaint.  Counsel contends that plaintiff's inmate appeals do not include most of the allegations reflected in his complaint against defendants Pettigrew, Moreno, Wyant, and Whitten, nor do they include his allegations that defendant Athanassious violated plaintiff's constitutional rights when he attempted to insert the catheter.[2]  In addition, defense counsel repeats the argument that plaintiff's complaint fails to state a

---

[2] To the extent that defense counsel is attempting to present a new argument in his reply brief regarding whether plaintiff exhausted his deliberate indifference claim against defendant Athanassious in connection with his insertion of plaintiff's catheter, the court declines to address it because plaintiff has not had a proper opportunity to respond.  <u>See</u> E.D. Cal. Local Rule 78-230 (m); <u>see also</u> <u>Eberle v. City of Anaheim</u>, 901 F.2d 814 (9th Cir. 1990) (the general rule is that parties may not raise a new issue for the first time in their reply brief).  Specifically, in defendants' motion to dismiss, defense counsel moved to dismiss only plaintiff's claims against defendants Moreno, Pettigrew, Whitten, and Wyant for failure to exhaust administrative remedies.  To be sure, defense counsel included one sentence in that motion noting that plaintiff's administrative appeal Log No. 06-1947 made no mention of Defendant Athanassious's attempt to insert a catheter into plaintiff's penis or the injury suffered by plaintiff as a result.  Nonetheless, defense counsel never moved to dismiss this claim against defendant Athanassious nor did counsel present any argument in support of a dismissal of that claim.  Moreover, defense counsel failed to reference defendant Athanassious in the headings of his motion or the summaries of his arguments.  (Defs.' Mot. to Dismiss at 1, 6-9 & Headlines II.A & II.A.3) (explicitly naming defendants Pettigrew, Moreno, Wyant, and Whitten but not defendant Athanassious).

9

cognizable claim for deliberate indifference against defendant Athanassious because the defendant did provide plaintiff with medical care. Lastly, defense counsel repeats the contention that plaintiff's complaint fails to state a claim for deliberate indifference against defendant Pettigrew on the grounds that Pettigrew did not intentionally shut the door on plaintiff's finger or deny him medical care when he learned plaintiff's finger was injured. (Defs.' Reply at 2-3.)

**ANALYSIS**

I. <u>Legal Standards Applicable to a Motion to Dismiss Pursuant to Non-Enumerated Rule 12(b)</u>

By the Prison Litigation Reform Act of 1995 ("PLRA"), Congress amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002).

The United States Supreme Court has ruled that exhaustion of prison administrative procedures is mandated regardless of the relief offered through such procedures. <u>Booth v. Churner</u>, 532 U.S. 731, 741 (2001). The Supreme Court has also cautioned against reading futility or other exceptions into the statutory exhaustion requirement. <u>Id.</u> at 741 n.6. Moreover, because proper exhaustion is necessary, a prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance or appeal. <u>Woodford v. Ngo</u>, 548 U.S. 81, 90-93 (2006).

In California, prisoners may appeal "any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare." Cal. Code Regs. tit. 15, § 3084.1(a). Most appeals progress from an informal review through three formal levels of review. <u>See</u> Cal. Code Regs. tit. 15, § 3084.5. A decision at the third formal level, also referred to as the director's level, is not appealable and will conclude a prisoner's administrative

remedy. Cal. Code Regs. tit. 15, §§ 3084.1(a) and 3084.5(e)(2). A California prisoner is required to submit an inmate appeal at the appropriate level and proceed to the highest level of review available before filing suit. Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005); Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002).

The PLRA exhaustion requirement is not jurisdictional but rather creates an affirmative defense that a defendant may raise in a non-enumerated Rule 12(b) motion. See Jones v. Bock, 549 U.S.199, 216 (2007) ("[I]nmates are not required to specially plead or demonstrate exhaustion in their complaints."); Wyatt v. Terhune, 315 F.3d 1108, 1117-19 (9th Cir. 2003). The defendants bear the burden of raising and proving the absence of exhaustion. Wyatt, 315 F.3d at 1119. "In deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact." Id. "I[f] the district court looks beyond the pleadings to a factual record in deciding the motion to dismiss for failure to exhaust – a procedure closely analogous to summary judgment – then the court must assure that [the prisoner] has fair notice of his opportunity to develop a record."[3] Id. at 1120 n.14. When the district court concludes that the prisoner has not exhausted administrative remedies on a claim, "the proper remedy is dismissal of the claim without prejudice." Id. at 1120. See also Lira v. Herrera, 427 F.3d 1164, 1170 (9th Cir. 2005), cert. denied 549 U.S. 1204 (2007). On the other hand, "if a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad." Jones, 549 U.S. at 221.

II. Discussion

The court finds that plaintiff has exhausted his claim against defendant Pettigrew for engaging in the excessive use of force in violation of plaintiff's Eighth Amendment rights. On August 23, 2006, plaintiff filed inmate appeal Log 06-1759. In that administrative appeal,

---

[3] Plaintiff was notified of the requirements for opposing a motion to dismiss brought pursuant to non-enumerated Rule 12(b) on December 10, 2008. (Order filed Dec. 10, 2008 at 3-4.)

plaintiff explained that defendant Pettigrew slammed a door shut on plaintiff's finger resulting in a serious injury. Plaintiff further explained in his administrative appeal that he tried to tell defendant Pettigrew that his finger had been severed and was bleeding, but that defendant Pettigrew merely laughed at him until he noticed plaintiff's blood pooling on the floor. Plaintiff asserted that he requested that prison officials discipline defendant Pettigrew for his unprofessional conduct and plaintiff asked for monetary compensation. Plaintiff pursued his administrative appeal, Log 06-1759 through the director's level of review. (Defs.' Exs. 1-2, Grannis Decl.)

Contrary to defense counsel's argument, plaintiff was not required to use Eighth Amendment legal terminology or state a proper legal claim or theory against defendant Pettigrew in his administrative appeal to satisfy the exhaustion requirement. As the Ninth Circuit has recently explained:

> A grievance need not include legal terminology or legal theories unless they are in some way needed to provide notice of the harm being grieved. A grievance also need not contain every fact necessary to prove each element of an eventual legal claim. The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation.

Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009). See also Jones, 549 U.S. at 219; Johnson v. Johnson, 385 F.3d 503, 522 (5th Cir. 2004) ("We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance process is not a summons and complaint that initiates adversarial litigation."). Here, plaintiff's administrative appeal included sufficient detail to put prison officials on notice of plaintiff's claim that defendant Pettigrew slammed his finger in a door resulting in a serious injury. Accordingly, the motion to dismiss filed on behalf of defendant Pettigrew with respect to plaintiff's Eighth Amendment claim should be denied.

However, the court also finds that plaintiff has failed to exhaust any constitutional claims against defendants Moreno, Whitten, and Wyant or any constitutional claims against

defendant Pettigrew, aside from the Eighth Amendment claim discussed above. Both parties agree that plaintiff filed two inmate appeals, Log 06-1759 and Log 06-1947. As discussed above, in Log 06-1759, plaintiff described how defendant Pettigrew slammed his finger in a door resulting in plaintiff suffering a serious injury. In Log 06-1947, plaintiff explained that defendant Athanassious attempted to re-attach his severed finger in the B-1 Clinic. He further explained that he was subsequently rushed to Doctor's Hospital to see a specialist because of an infection. Plaintiff informed prison officials that medical personnel at Doctor's Hospital ultimately amputated half of his finger and admitted him to the hospital for eight days. Plaintiff requested that prison officials severely reprimand defendant Athanassious and he asked for monetary compensation. Just as was the case with respect to administrative appeal, Log 06-1759, plaintiff pursued Log 06-1947 through the director's level of review. (Defs.' Exs. 5-6, Grannis Decl.)

The primary purpose of an administrative appeal is "to notify the prison of a problem." Griffin, 557 F.3d at 1120. Plaintiff's allegations in Log 06-1759 and Log 06-1947 could not have alerted prison officials to any problem he experienced with defendants Moreno, Whitten, and Wyant. Nor could plaintiff's allegations have indicated to prison officials that he was experiencing any problems with defendant Pettigrew after the incident where Pettigrew slammed the door on his fingers. Plaintiff certainly was not required to name all of the individuals in his administrative appeal that he later decided to name in his lawsuit. Jones, 549 U.S. at 219 (2007) ("exhaustion is not per se inadequate simply because an individual later sued was not named in the grievances."). Moreover, there is no requirement that plaintiff allege every fact necessary to state or prove a legal claim in his administrative appeal. Griffin, 557 F.3d at 1121. However, plaintiff was required at a minimum to "provide enough information . . . to allow prison officials to take appropriate responsive measures." Id. at 1121 (quoting Johnson v. Testman, 380 F.3d, 691, 697 (2d Cir. 2004)). Here, even liberally construed, plaintiff's administrative appeals do not reference any of the alleged incident of subsequent harassment or mistreatment by defendants Moreno, Whitten, Wyant and Pettigrew, which plaintiff now alleges

in this action. Rather, the only incidents that were addressed in those administrative appeals were defendant Pettigrew's slamming of plaintiff's finger in the door and defendant Athanassious treatment of plaintiff's injury. In fact, plaintiff does not even truly dispute this point.

As noted above, "if a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad." Jones, 549 U.S. at 221. See also Vaden v. Summerhill, 449 F.3d 1047, 1051 (9th Cir. 2006) (a prisoner "may initiate litigation in federal court only after the administrative process ends and leaves his grievances unredressed"). Accordingly, the motion to dismiss plaintiff's constitutional claims against defendants Moreno, Whitten, and Wyant as well as any constitutional claims against defendant Pettigrew, aside from the Eighth Amendment excessive use of force claim discussed above, should be granted.

III. Legal Standards Applicable to a Motion to Dismiss Pursuant to Rule 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of the complaint. North Star Int'l v. Arizona Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983). Dismissal of the complaint, or any claim within it, "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). See also Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984). In order to survive dismissal for failure to state a claim a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

In determining whether a pleading states a claim, the court accepts as true all material allegations in the complaint and construes those allegations, as well as the reasonable inferences that can be drawn from them, in the light most favorable to the plaintiff. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Hosp. Bldg. Co. v. Trustees of Rex Hosp., 425 U.S.

738, 740 (1976); Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989). In the context of a motion to dismiss, the court also resolves doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). However, the court need not accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of fact. W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

In general, pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). The court has an obligation to construe such pleadings liberally. Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). However, the court's liberal interpretation of a pro se complaint may not supply essential elements of the claim that were not pled. Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982); see also Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992).

IV. Discussion

Inadequate medical care does not constitute cruel and unusual punishment cognizable under § 1983 unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). Before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Lab., 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06).

Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp., 550 U.S. at 555. Defense counsel moves to dismiss plaintiff's Eighth Amendment deliberate indifference claims against defendant Athnassious as groundless because, according to plaintiff's own allegations, the defendant treated plaintiff's injury. According to defense counsel plaintiff has not alleged that defendant Athanassious denied, delayed, or intentionally interfered

15

with plaintiff's medical care.  At most, according to defense counsel, plaintiff alleges that defendant Athanassious was negligent in treating plaintiff's finger.

Defense counsel's position on the merits of plaintiff's claims may ultimately prove to be correct.  However, is assessing a motion to dismiss, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.  Indeed, it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test."  Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

Here, as defense counsel observes, plaintiff alleges in his complaint that defendant Athanassious exercised deliberate indifference when he stitched and dressed plaintiff's "unsalvagable" finger on August 18, 2006, and subsequently recommended that plaintiff continue receiving dressing changes and benedyne soaks on August 31, 2006.  Plaintiff also alleges in his complaint that defendant Athanassious attempted to force a catheter into plaintiff's penis, knowingly causing him great pain and bleeding for several days.  Liberally construed, plaintiff's allegations against defendant Athanassious in this regard state a cognizable claim for relief under § 1983.  Accordingly, the motion to dismiss filed on behalf of defendant Athanassious should be denied.

Finally, the court acknowledges that defense counsel moves to dismiss plaintiff's Eighth Amendment deliberate indifference claim against defendant Pettigrew as groundless because, according to plaintiff's own allegations, as soon as defendant Pettigrew realized that plaintiff faced a substantial risk of serious harm to his health, Pettigrew took reasonable steps to abate the risk by opening the door, yelling "man down," and asking another inmate to get a towel.

The court agrees that plaintiff's complaint fails to state an Eighth Amendment deliberate indifference claim against defendant Pettigrew but finds that the defendant is nonetheless, not entitled to the granting of his motion to dismiss.  It is true that plaintiff has

failed to allege in his complaint that defendant Pettigrew had any involvement whatsoever in plaintiff's medical care. For example, plaintiff does not allege that defendant Pettigrew denied, delayed, or intentionally interfered with his medical care. Plaintiff also does not allege that defendant Pettigrew was deliberately indifferent to his serious medical needs. Nor does the court believe plaintiff intended to so allege. Rather, liberally construed, plaintiff has alleged that defendant Pettigrew intentionally inflicted cruel and unusual punishment on him by slamming plaintiff's finger in the door. In this regard, plaintiff's complaint states a cognizable Eighth Amendment claim against defendant Pettigrew for excessive use of force. Accordingly, the motion to dismiss filed on behalf of defendant Pettrigrew in this regard should be denied.

## CONCLUSION

For the reasons discussed above, IT IS HEREBY RECOMMENDED that defendants' March 10, 2009 motion to dismiss (Doc. No. 23) be granted in part and denied in part as follows:

1. Defendants' motion to dismiss plaintiff's complaint for failure to exhaust administrative remedies prior to filing suit as to his Eighth Amendment excessive use of force claim against defendant Pettigrew be denied;

2. Defendants' motion to dismiss plaintiff's complaint for failure to exhaust administrative remedies prior to filing suit as to his constitutional claims against defendants Moreno, Whitten, and Wyant and any constitutional claims against defendant Pettigrew, aside from his Eighth Amendment excessive use of force claim, be granted;

3. Defendants' motion to dismiss plaintiff's complaint for failure to state a claim for deliberate indifference under the Eighth Amendment against defendant Athanassious be denied;

4. Defendants' motion to dismiss plaintiff's complaint for failure to state a claim for deliberate indifference under the Eighth Amendment against defendant Pettigrew be denied as unnecessary because such a claim is not presented by plaintiff;

    5. Defendants Moreno, Whitten, and Wyant be dismissed from this action; and

    6. Defendants Athanassious and Pettigrew be directed to file an answer to plaintiff's complaint within thirty days.

    These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: November 9, 2009.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:9
rodg2269.57